UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

WILSON FILS LAMY,   Case No.: 22-15722-PDR
 Chapter 7
    Debtor.
_____/

**CHAPTER 7 TRUSTEE'S OBJECTION
TO DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION**

KENNETH A. WELT, as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of WILSON FILS LAMY (the "Estate"), by and through undersigned counsel, pursuant to Fla. Const. Art. X §§ 4(a)(1), and Fed.R.Bank.P. 4003, hereby files this *Objection to Debtor's Claim of Homestead Exemption* (the "Objection").

**BACKGROUND**

1. On July 26, 2022 ("Petition Date"), WILSON FILS LAMY ("Debtor"), filed an individual voluntary petition for relief under Title 11, Chapter 7 of the United States Bankruptcy Code.

2. The Debtor's 11 U.S.C. § 341 Meeting of Creditors was held and concluded on January 3, 2023 (the "341 Meeting").

**The Real Property**

3. The Debtor schedules his ownership interest in real property located at 5415 NW 22nd St, Lauderhill FL 33313 (the "Real Property"), with a value of $467,170.00 and a secured claim of $127,647.00 in favor of Wells Fargo Bank (the "Secured Creditor"). *See* Schedule A/B

1

and D [D.E. 1].[1] The Debtor claims the Real Property wholly exempt pursuant to "Fla. Const. art. X, §4(a)(1)." Schedule C, [D.E. 1].

4. The Real Property is a four (4) unit multi-family building within a municipality as per Broward County Property Appraiser website. *See* **Exhibit "A."** The Debtor has testified that all four units have separate electrical meters.

5. The Debtor and Dorceline Baptiste Lamy ("D. Lamy") acquired the Real Property in September of 2006. *See* **Exhibit "B."**

6. At or around the time of purchase, the Debtor and D. Lamy executed a mortgage, containing a multi-family rider, assigning rental proceeds of the Real Property to the mortgage lender. *See* **Exhibit "C."**

### The Real Property is Not the Debtor's Residence

7. The Debtor conceded at the 341 Meeting that he and D. Lamy reside in one unit ("First Unit"), while one unit is periodically occupied by the Debtor's in-laws who "come and go" from Haiti, one unit is occupied by a family friend, and one unit was vacant, for which he was looking for tenant (collectively, the "Rental Units").

8. However, the Debtor was not even living in the First Unit as of the Petition Date. In or around mid-August, 2022 - just weeks after the Petition Date - the Debtor, through counsel, represented to the Trustee and U.S. Trustee's office that he was not residing at the Real Property and spent most of his time living in New York.

9. Consistent with this explanation, the Debtor's *Schedule I* reflects Debtor is employed as a registered nurse at the Metropolitan Hospital in New York, New York. [D.E. 1]

---

[1] On February 1, 2023, the Secured Creditor filed a notice of reaffirmation agreement entered with the Debtor reflecting the outstanding secured debt at $124, 224.59 [D.E. 39].

2

10. He further explained that when he was not living in New York, he was staying with a friend at the Pembroke Pines Residence (defined below).

11. The Debtor also lists other residential addresses on various financial and government papers. As of the 341 Meeting, the Debtor's Florida driver's license reflects a residential address located at 8331 NW 52nd St, Lauderhill, FL 33351.

12. The Debtor's bank statements, including for Bank of America Account x9431 ("BOA x9431") and Municipal Credit Union Account x1709 ("MCU x1709"), reflect two other mailing addresses from that of the Real Property. More specifically, the BOA x9431 statements list a mailing address at 148 NW 91st Ave., Pembroke Pines FL, 33024 (the "Pembroke Pines Residence"), and the MCU x1709 statements list a mailing address at 1275 E 51st St, Apt. 6L, Brooklyn, NY 11234 (the "New York Residence"). *See* **Composite Exhibit "D" and "E."**

13. Additionally, in attempting to serve the Debtor with the Court's Order approving undersigned's retention as Trustee's counsel [D.E. 24, 25], the mailing was returned to Trustee's counsel on or about December 3, 2022, and listed the Debtor's forwarding address as the Pembroke Pines Residence. *See* **Exhibit "F."**

**ARGUMENT**

14. The Real Property is not exempt. The Debtor waived any entitlement to homestead exemption as to the Real Property because, *inter alia* the Debtor (1) does not reside in the Real Property, (2) has no intention of residing in the Real Property but rather uses it to generate rental income, and (3) Debtor has no obligation to support any adult family members or friends that may reside in the Real Property. Accordingly, the Debtor is not entitled to the claim Florida's Homestead Exemption with respect to the Real Property. Even if the Debtor resided in the Real Property, the allowable homestead exemption would be limited to the First Unit.

3

### A. Overview of Homestead Exemption and Public Policy Considerations

15. The Florida Constitution ("Constitution"), Art. X, § 4(a)(1) provides for the protection of entitled homes in Florida from most creditor claims. The homestead exemption was established in the interest of protecting the family home. *See e.g. In re Edwards*, 356 B.R. 807 (Bankr.M.D.Fla.2006). However, there is "no absolute right to homestead." *Horne v. Markham*, 288 So2d 196 (Fla.1923).

16. "The homestead exemption law is intended to be a shield, not a sword, and should not be applied as to make it an instrument of fraud or as an imposition upon creditors." *In re Englander*, 95 F.3d 1028, 1031 (11th Cir. 1996); *see Town of Lake Park v. Grimes*, 963 So. 2d 940, 942 (Fla. 4th DCA 2007) ("[T]he exemption is not to be liberally construed so as to make it an instrument of fraud or imposition on creditors.").

17. Notwithstanding the liberal construction afforded to the homestead exemption, "the provision in the Constitution dealing with homestead must be given its plain meaning and should not be extended more than what the constitution provides." *In re Bell*, 252 B.R. 562, 563 (Bankr.M.D.Fla.2000).

### B. Exemption determined as of the Petition Date

18. A debtor's entitlement to an exemption is determined as of the date of the petition. *See In re Mohammed*, 376 B.R. 38, 41-42 (Bankr.S.D.Fla.2007) (holding that "the petition date is the only relevant time period for determining a debtor's entitlement to homestead exemption").

19. "Many courts recognize the petition date as the 'watershed date' of the bankruptcy proceeding—the date upon which creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions are determined." *In re Gilpin*, 479 B.R. 905, 908 (Bankr.M.D.Fla 2011) (internal quotations omitted); *see also* 11 U.S.C.

§ 541(a)(1) (property of the estate is comprised of all legal or equitable interests of the debtor in property "as of the commencement of the case"); 11 U.S.C. § 502(b) (after notice and hearing, the court shall determine the amount of an allowed claim "as of the date of the filing of the petition").

### C. Scope and Limitations of Homestead Exemption

20. To successfully claim the homestead protection of real property, a debtor must meet all of the requirements imposed by Article X, § 4(a)(1) of the Constitution. *In re Englander*, 95 F.3d 1028, 1031 (11th Cir. 1996). More specifically, a debtor claiming homestead protection must: (1) reside in the property; (2) have an ownership interest in the property; and (3) depending on the locality, the property must not exceed the applicable acreage limitations.

### D. The residence requirement of the homestead exemption is only satisfied when the Debtor (1) actually occupies the Real Property and (2) intends on residing permanently therein

21. It is well settled that the residence requirement in seeking homestead status is established by (1) actual occupancy of the property and (2) an intent to reside in the property permanently. *In re Williams*, 09-34336-BKC-AJC, 2013 WL 3353633 at 4 (Bankr. S.D. Fla. July 1, 2013); *In re Gaines*, 305BK14608GLP, 2008 WL 3200276, at 2 (M.D. Fla. Aug. 5, 2008); *see In re Bratty*, 202 B.R. 1008 (Bankr.S.D.Fla.1996); *Hillsborough Investment Company v. Wilcox,* 152 Fla. 889, 13 So.2d 448 (1943); *In re Brown,* 165 B.R. 512 (Bankr.M.D.Fla.1994).

22. The actual occupancy prong imposes an objective test, while the intent to reside prong imposes a subjective test. Most importantly, both prongs must be met to establish the residence requirement. *In re Williams*, 09-34336-BKC-AJC, 2013 WL 3353633, at 4; *In re Franzese*, 383 B.R. 197 (Bankr.M.D.Fla.2008).

23. Contrary to Debtor's testimony at the 341 Meeting, there is clear evidence as detailed above that the Debtor does not occupy any part of the Real Property—neither the First

Unit or any of the other units. If the Court determines that the Debtor does not occupy the First Unit, then the Debtor cannot satisfy the actual occupancy prong requirement in the homestead exemption analysis.

24. However, even if the Court determines that the Debtor occupies the First Unit, then claim of the homestead exemption would still be limited exclusively to the First Unit rather than the entire Real Property, because the remaining units are not intended to be nor actually used as the Debtor's residence but rather for commercial purposes. *In re Bornstein*, 335 B.R. 462, 466 (Bankr. M.D. Fla. 2005); *see also In re Wilson*, 393 B.R. 778, 781 (Bankr. S.D. Fla. 2008).

### *(1) Actual Occupancy in the Real Property*

25. To establish occupancy, the debtor must actually live in the Real Property. *Id.*

26. The Real Property at issue must also be objectively habitable and the debtor must utilize the premises for personal use. *In re Williams*, 09-34336-BKC-AJC, 2013 WL 3353633 (explaining that debtor could not claim homestead exemption in an empty parking lot or in the damaged portion of Real Property where there were no utilities running).

27. In addition, where a Real Property is used for commercial purposes, a debtor cannot claim the entire Real Property as homestead based on the personal use of only a portion of the structure. *In re Wilson*, 393 B.R. at 782-783 (Court determined debtor could not claim homestead protection on the entirety of a two-story building that operated as a nightclub where debtor only lived in a small apartment located in the second floor of the building. Citing the 1968 Amendment to Article Article X, § 4 of the Constitution, which removed the language of "business house," the Court reasoned that the homestead exemption was not intended to cover property used for commercial purposes despite its liberal interpretation).

28. Likewise, where a debtor resides in a unit of a duplex and rents the other units, a debtor may only claim homestead protection over the unit of the duplex that he occupies. *In re Bornstein*, 335 B.R. at 466 (Eleventh Circuit determined that the debtor was only entitled to exempt the side of the duplex where she resided, leaving the other rented portion of duplex as nonexempt); *see also First Leasing & Funding of Florida, Inc. v. Fiedler*, 591 So. 2d 1152, 1153 (Fla. 2d DCA 1992) (holding that the homestead exemption only extended to the unit occupied by debtor in a one-floor triplex where the two remaining units were rented to tenants).

29. Here, the evidence overwhelmingly demonstrates that Debtor does not actually reside in the Real Property.

30. The Debtor does not use the Real Property address on his driver's license, on his MCUx1709 account, on his BOA x9431 account, and even mail in this case has been returned reflecting a forwarding address at the Pembroke Pines Residence.

31. The Debtor has also represented to the Trustee and U.S. Trustee's Office, that he was not residing at the Real Property around the Petition Date.

32. However, even if the Court accepted the Debtor's 341 Meeting statement that he resided in the First Unit, the Debtor conceded that he does not actually reside in any of the remaining units that were used by other adult family members, friends, and/or tenants. In that instance, the exemption would be limited solely to the First Unit.

### *(2) Intent to Reside Permanently*

33. To satisfy the intent prong, a debtor must show subjective intent to live permanently in the Real Property. *In re Williams*, 09-34336-BKC-AJC, 2013 WL 3353633, at 4; *In re Franzese*, 383 B.R. at 197.

34. While intent is a critical portion in the determination of a debtor's entitlement to the homestead exemption, the Debtor's expression in and of itself may be insufficient. *See e.g. In re Bratty*, 202 B.R. at 1010. "The Debtor's expression of his intention is probative, but if an owner acts inconsistently with a self-professed intention to establish homestead, a claim for exemption may fail." *Id.*; *see also Smith v. Hamilton,* 428 So.2d 382 (Fla. 4th DCA 1983).

35. Here, the Debtor's actions flatly contradict any intent to establish a homestead in any portion of the Real Property. The addresses listed on various papers and documents of the Debtor, including those referenced hereinabove, are not located at the Real Property. The Debtor maintains his in-person employment in New York, where he spends most of his time. Even when the Debtor is in Florida, the Debtor has represented that he stays at a friends' house. As such, the Debtor's actions demonstrate he lacks the intent to reside in the Real Property.

36. Even if the Debtor's self-professed intention to maintain his homestead was accepted on its face, the Debtor has never expressed his intent to live permanently in any of the Rental Units. The Debtor's 341 Meeting testimony detailed his intent for the Rental Units to be used by non-immediate family, friends, or tenants, including to generate rental income.

37. As such, the Debtor's occupancy and residency, both objectively and subjectively based on intent outright preclude the Debtor's entitlement to the homestead exemption.

E. **Waiver of Homestead Exemption by Abandonment**

38. The status of a property as homestead is terminated when an owner abandons the property. *Brown v. Lewis*, 520 F.Supp 1114, 1116 (Bankr.M.D.Fla.1981). A claim of homestead exemption may be forfeited by abandonment or alienation. *In re Franzese*, 383 B.R. at 203.

39. Whether an abandonment of property is sufficient to terminate homestead status is fact specific. *Jacksonville v. Bailey*, 159 Fla. 11, 30 So.2d 529 (1947); *Beensen v. Burgess*, 218 So.2d 517 (4th D.C.A. Fla.1969); *In re Klaiber*, 265 B.R. 290, 292–93.

40. A homestead may be found to be abandoned where the claimant has relinquished possession of the property and formed the intention to discontinue using the property as a homestead. *O'Neal v. Miller*, 143 Fla. 171, 196 So. 478 (1940); *Marsh v. Hartley*, 109 So.2d 34 (Fla. 2d DCA 1959).

41. Beyond mere tacit abandonment, the Debtor here affirmatively demonstrated abandonment of the Real Property as part of his homestead, including *inter alia:* (1) execution of the multi-family rider, assignment of rents, and acknowledgement of investment use (*See* **Exhibit "C"**); (2) various current financial and government documents reflecting other addresses as set forth hereinabove, (*See* **Exhibits D, E, and F**); and (3) representations and testimony during the course of this bankruptcy case as set forth hereinabove.

42. The Debtor has clearly and continuously abandoned any claim of the homestead exemption with respect to the Real Property.

**F. The Real Property is Divisible and may be Lawfully Conveyable into Separate Units**

43. When a debtor resides in a property that is used for both personal living and for generating rental or business income, a ". . . debtor can only claim [as exempt] the portion of the property used as his or her homestead . . . [t]he rented portion is not exempt and is subject to claims by the debtor's creditors." *In re Bornstein*, 335 B.R. at 466; *see also In re Wilson*, 393 B.R. at 783.

44. If a debtor's residence is only a fraction of the entire property, courts must determine whether the property can be severable and lawfully conveyable as an independent parcel under existing law. *Anderson v. Letosky*, 304 So. 3d 801, 804-805 (Fla. 2d DCA 2020) (finding

that debtor was entitled to protect the entirety of his property even if he rented three bedrooms to tenants because the rented bedrooms could not be severed from the property without destroying its utility as a single-family residence)(citing *First Leasing & Funding of Florida, Inc. v. Fiedler*, 591 So. 2d at 1153).

45. If a court finds that the property may be divided using an imaginary line and if the property may be lawfully conveyable into separate units under applicable zoning ordinances, then the property is severable for homestead purposes. *In re Kuver*, 70 B.R. 190, 192 (Bankr.S.D.Fla. 1986) (holding that debtor could exempt entire duplex regardless of renting one unit to a third party because the property could not be divided under zoning laws); *In re Makarewicz*, 130 B.R. 620, 621 (Bankr.S.D.Fla. 1991)(holding a two-story garage rented to third parties was not severable because it was described as single family structure under applicable zoning ordinance).

46. Here, the Real Property is severable and lawfully conveyable into separate units.

47. The Real Property is zoned as multifamily with four (4) living units (*See* **Exhibit "A"**), which can be divided. The First Unit and Rental Units are all independent of one another, with separate bathrooms and entry ways, without any shared communal space, and each unit can accommodate separate utility lines, and already have separate electrical meters.

48. Since the primary land use of the Real Property is multifamily, not single-family, then it follows that the Real Property is severable for homestead exemption purposes. *Anderson v. Letosky*, 304 So. 3d at 804-805 (explaining that single family residences are distinguishable from duplex structures in that single-family residences are less likely to be severable since the conveyance of portions of the property into separate units would destroy its utility as a single-family residence); *see also In re Bornstein*, 335 B.R. at 465-466.

**G. Even if not divisible, the Real Property should be sold and proceeds apportioned.**

49. While the Trustee submits that (1) no portion of the Real Property is exempt and (2) even if the First Unit was exempt, the Real Property may be divided and conveyable in separate legal units, even if the Court disagrees on both points, the Real Property should still be sold with proceeds apportioned between exempt and non-exempt portions.

50. Where a property cannot not be divided or lawfully conveyable into separate units, courts have applied an equitable solution to allow the trustee to sell the property and apportion the sale proceeds between the debtor and the estate, after satisfying any mortgage or other liens of record and paying the ordinary and necessary costs and expenses of sale and closing. *In re Englander*, 95 F. 3d at 1032 (explaining that apportionment is an equitable solution where there is a non-severable property since it allows for the property sale proceeds to be accordingly apportioned to reflect the debtor's exempted portion and non-exempt portion); *In re Wilson*, 393 B.R. at 783 (Court allowed the sale of a twenty-eight room building and apportioned the sale proceeds to reflect the debtor's exempted portion of the building).

51. Though the Southern District of Florida has in some instances allowed a debtor's property to be wholly exempt when applicable zoning laws did not permit dividing the property, the Court should allow for apportionment. *In re Williams*, 09-34336-BKC-AJC, 2013 WL 3353633, at 5 (Court explained that the outcomes in cases like *Kuver* and *Makarewicz* occurred before the Eleventh Circuit's *Englander* opinion, and thus, the Court determined that the *Englander* decision in allowing apportionment was controlling); *But see In re Ensenat*, 06-15979 BKC-LMI, 2007 WL 2029332, at 4 (Bankr. S.D. Fla. May 24, 2007) (unreported case where the Court allowed for debtor to claim entire duplex property as exempt, including a second building located within the property, because the debtor never rented the property); *In re Kuver*, 70 B.R. at

11

193 (reported case where the Court decided that debtor was entitled to claim entire duplex property as exempt because conveyance of individual units was not allowed under existing zoning law).

52. Because the Real Property could be divided into four separate units and because there are no zoning laws that restrict the severability of the four separate units within the Real Property, it follows that the Debtor is not entitled to claim the entire Real Property exempt as homestead. At best, the exemption should only protect the First Unit, as intended by the Florida Legislature in its 1968 amendment of Article X, § 4 of the Constitution.

53. Alternatively, if the Court finds that the Real Property is not severable, the Court should allow the Trustee to sell the Real Property and apportion the sale proceeds according to the exempt and non-exempt portions of the Real Property. *In re Englander*, 95 F. 3d at 1032; *In re Wilson*, 393 B.R. at 783; *In re Williams*, 09-34336-BKC-AJC, 2013 WL 3353633, at 5.

54. Ultimately, under the facts of this case and applicable case law, the Debtor's homestead exemption should be denied, and the Trustee's exemption sustained.

**WHEREFORE**, for the reasons more particularly set forth above, the Trustee respectfully requests that this Court enter an Order (1) sustaining the Trustee's objection to the homestead exemption; (2) determining that the Debtor is not entitled to the homestead exemption of the Real Property; and (3) granting such other and further relief as this Court deems just and proper.

Dated: February 2, 2023                Respectfully submitted,

        **DUNN LAW, P.A.**
        *Counsel for Kenneth A. Welt, Chapter 7 Trustee*
        66 West Flagler Street, Suite 400
        Miami, Florida 33130
        Tel: (786) 433-3866 || Fax: (786) 260-0269
        michael.dunn@dunnlawpa.com
        paula.martinez@dunnlawpa.com

        By: */s/ Michael P. Dunn*
           Michael P. Dunn, Esq.
           Florida Bar No: 100705

## **CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing, was served on this 2nd day of February, 2023, via Notice of Electronic Filing (CM/ECF), upon all registered users in this case, and by U.S. mail upon Debtor:

Wilson Fils Lamy
5415 NW 22nd St
Lauderhill, FL 33313

Wilson Fils Lamy
148 NW 91st Ave
Pembroke Pines, FL 33024-6458


By: */s/ Michael P. Dunn*
     Michael P. Dunn, Esq.
     Florida Bar No: 100705